IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| ANTHONY WADE GALLOWAY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:14-cv-00040 |
| ) | |
| SUNBELT RENTALS, INC., *et al.*, ) | |
|     Defendant. ) | |
| ) | By:    Joel C. Hoppe |
| ) |          United States Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Anthony Wade Galloway's Motion to Compel Production of Sworn Witness Statements made pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. ECF No. 15. Defendants Sunbelt Rentals, Inc. ("Sunbelt"), and David Church filed a response in opposition to the motion. ECF No. 17. Neither party requested oral argument. On December 24, 2014, the Court ordered *ex parte* submission of the contested witness statements for *in camera* review. ECF No. 23. The Defendants complied on December 31, 2014. ECF No. 25.

This motion is before me by referral under 28 U.S.C. § 636(b)(1)(A). ECF No. 11. After reviewing the parties' briefs, the contested witness statements, and the applicable law, I find that Galloway's motion is well-founded, and I therefore GRANT the Motion to Compel.

I. Relevant Facts

The parties agree on the majority of the facts. *See* Pl. Br. 1–3; Def. Br. 1–3. On August 21, 2012, Galloway was operating a moped in Winchester, Virginia when he collided with a commercial truck operated by Church, an employee of Sunbelt. Pl. Br. 1. Galloway filed a complaint in state court in Frederick County, Virginia, alleging negligent operation of a motor

1

vehicle by Church. *Id.* The case was removed to this Court by the Defendants, ECF No. 1, and is scheduled for a jury trial beginning on May 26, 2015.

In their initial disclosures, the Defendants identified witness statements from Robert and Kristin Underwood. *Id.* at 1; *id.* Ex. 1, at 2–3. The Underwoods observed the accident from their nearby vehicle and have knowledge of the accident and the events leading up to it. Pl. Br 2. Defense counsel took the Underwoods' statements on August 28, 2012, at a Virginia circuit court. *Id.* The statements were sworn, taken in question and answer format, and transcribed by a court reporter. *Id.* The Defendants have refused to turn over these statements, citing work-product privilege. *Id.* at 1–2. Further, Kristin Underwood has refused Galloway's request for authorization to receive the statements and indicated to defense counsel that she does not wish Galloway to have the statements. *Id.* at 2–3.

The parties disagree on one key fact: Galloway asserts that Defendants intend to rely on the Underwoods' statements to support their claims that Church was not negligent and that Galloway was contributorily negligent. Pl. Br. 3. In their brief, Defendants state that they included the Underwoods' statements in their initial disclosures because they were unsure whether the Underwoods would be available for deposition and trial. Def. Br. 1. They now know that the Underwoods are available and disclaim any current intent to rely on the sworn statements as evidence should the case go to trial. *Id.*

In their reply brief, Defendants provide additional facts about their business and the investigation. Defense counsel were retained by Sunbelt to handle any litigation arising out of this specific incident and are not on general retainer. Def. Br. 2; Def. Br. Ex. A, at ¶¶ 7–8. Sunbelt does not hire counsel or take sworn witness statements about an incident unless it anticipates litigation arising from it. Def. Br. 3; Def. Br. Ex. A, at ¶¶ 12, 14. Before taking the

2

Underwoods' statements, and in anticipation of litigation, defense counsel issued a spoliation of evidence letter to Galloway's counsel.[1] Def. Br. 2; Def. Br. Ex. B . Finally, the Underwoods gave a statement to police the day after the incident, and this statement is in Galloway's possession. Def. Br. 2; Def. Br. Ex. C.

## II. Discussion

Rule 26(b)(3) of the Federal Rules of Civil Procedure insulates work product from discovery. Work product is "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). It is divided into two categories: fact work product and opinion work product. *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994). Opinion work product includes the mental impressions, conclusions, opinions, and legal theories of a party's attorney. *Id*. Fact work product encompasses such things as statements, interviews, chronologies, and correspondence. *Id.*; *see also In re John Doe*, 662 F.2d 1073, 1076 (4th Cir. 1981) (defining fact work product). Opinion work product is heavily protected and "can be discovered only in very rare and extraordinary circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997) (emphasis omitted) (quoting *In re Grand Jury Proceedings*, 33 F.3d at 348). Fact work product may be subject to production if it is otherwise discoverable under Rule 26(b)(1) and the party seeking the fact work product shows a substantial need for the material and an inability to secure its substantial equivalent by alternate means without undue hardship. *Id.*; Fed. R. Civ. P. 26(b)(3)(A).

---

[1] Following the accident, Galloway received inpatient hospital care for almost two months, much of which he spent in a coma, and he did not retain counsel until after his discharge. Pl. Br. 6. During a conference call, Mr. Stivers explained that he had been retained by a relative of Galloway for another matter at the time of the incident and took some steps on Galloway's behalf before being officially retained. One of these steps was maintaining the moped and helmet involved in the accident.

3

Galloway argues that the Underwoods' statements do not qualify as any kind of work product because they were taken shortly after the accident and before suit had been filed. Pl. Br. 3–4 (citing *McDougall v. Dunn*, 468 F.2d 468 (4th Cir. 1972)). In *McDougall*, after the plaintiff and defendant had been in a car accident, the plaintiff moved to compel production of statements secured by a claims adjuster of the defendant's insurance carrier. *Id.* at 473. The court doubted whether these statements were work product because they were taken in the regular course of the insurance carrier's business rather than in anticipation of litigation. *Id.*; *accord Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) ("[M]aterials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)."). The court was not concerned with when the statements were taken, as Galloway suggests, but with the purpose for which they were taken. *McDougall*, 468 F.2d at 473. In this case, defense counsel were retained specifically to handle any litigation arising out of Galloway's accident, Def. Br. 2; Def. Br. Ex. A, at ¶¶ 6–11, and the Underwoods were questioned to preserve their statements in case they were unavailable for deposition or trial testimony, Def. Br. 1, 3. The Defendants make clear that the Underwoods' statements were not taken in the regular course of Sunbelt's business.

The Underwoods' statements are fact, rather than opinion, work product. Though courts recognize that work product encompasses a spectrum delineated by the amount of attorney thought inherent in the item, determining the amount of protection it deserves requires a binary classification as either fact or opinion. S*ee Gulf Grp. Gen. Enters. Co. v. United States*, 96 Fed. Cl. 64, 68 (2011) (quoting *Office of Thrift Supervision v. Vinson & Elkins, LLP*, 168 F.R.D. 445, 446 (D.D.C. 1996), *aff'd*, 124 F.3d 1304 (D.C. Cir. 1997)). Defendants concede that the

4

Underwoods' statements are fact work product, Def. Br. 4, and they are right to do so. Though the transcript contains defense counsel's questions, those questions do not contain enough attorney thought to deserve the great protection provided to opinion work product, especially considering that the Underwoods' answers, reproduced verbatim, are inherently factual. *See Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 652 (D. Alaska 1994) (considering verbatim responses to a questionnaire put to potential class members to be factual information); *Penk v. Oregon State Bd. of Higher Educ.*, 99 F.R.D. 511, 516–17 (D. Or. 1983) (same).

Galloway can thus discover the Underwoods' statements if he demonstrates a substantial need for them and an inability to secure their substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A). In his brief in support, Galloway stresses how soon after the accident the statements were taken and how he was unable to initiate his own investigation until after he was discharged from the hospital two months later. Pl. Br. 4–6. Defendants counter by arguing that Galloway can easily secure the statements' substantial equivalent by deposing the Underwoods and examining the statement they gave to police the day after the accident. Def. Br. 6–7.

The Fourth Circuit has recognized that contemporaneous witness statements "constitute 'unique catalysts in the search for truth' in the judicial process." *Nat'l Union*, 967 F.2d at 985 (quoting *McDougall*, 468 F.2d at 474). Memory inevitably fades and with it the accuracy of witness statements. *See McDougall*, 468 F.2d at 474 (quoting *New York Cent. R.R. Co. v. Carr*, 251 F.2d 433, 435 (4th Cir. 1957) ("[T]he lapse of many months and the dimming of memory provides much reason for [] counsel to examine any substantially contemporaneous declarations or admissions.")). Accounts rendered from fresh recollections are universally held to be more reliable than those given after time has passed. *Bowling v. Appalachian Elec. Supply, Inc.*, No. 3:13cv27347, 2014 WL 1404572, at *6 (S.D.W. Va. Apr. 10, 2014). Therefore, "courts have

5

widely found good cause to compel the disclosure of a witness statement made at the time of the accident; particularly, if the party seeking the statement did not have an opportunity to question the witness until weeks or months later." *Id.* (citing *McDougall*, 468 F.2d at 474); s*ee also,* 6 Moore's Federal Practice § 26.70[5][c] (Matthew Bender 3d ed.) (Contemporaneous statements "are unique in that they provide an immediate impression of the facts. A lapse of time itself may make it impossible to obtain a substantial equivalent of the material"). Courts have generally considered statements taken within one week of an incident to be contemporaneous. *Bowling*, 2014 WL 1404572, at *6 (citing *Bryant v. Trucking*, No. 4:11cv2254, 2012 WL 162409, at *4 (D.S.C. Jan. 18, 2012)); *Suggs v. Whitaker*, 152 F.R.D. 501, 508 n.5 (M.D.N.C. 1993). Conversely, statements made several weeks or months after an incident are not considered contemporaneous. *Suggs*, 152 F.R.D. at 508 n.5 (citing *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774–75 (M.D. Pa. 1985)).

The Underwoods are key witnesses to the accident and the events leading up to it. Accurate recordings of their recollections are of paramount importance to Galloway's ability to prepare his case. *See McDougall*, 468 F.2d at 475. While Galloway can secure the Underwoods' sworn statements at this time through depositions, he will receive their recollections only through the imperfect window of two intervening years. A deposition based on two-year-old memories is not the substantial equivalent of a witness statement taken a week after the incident, especially when Galloway was physically incapable of initiating his own contemporaneous investigations due to his injuries. *See id.* at 475–76 (finding that depositions taken two years after the incident were not substantially equivalent to contemporaneous statements when the movant was unable to conduct his own contemporaneous investigation due to injuries).

6

Neither is the Underwoods' statement to police substantially equivalent. Though it is contemporaneous to the accident, it contains significantly less detail than their witness statements. The police statement is eighteen handwritten lines, Def. Br. Ex. C, while the two witness statements total sixteen typed pages, Tr. of Underwoods' Statements, ECF No. 25. Furthermore, while the Underwoods submitted one statement to police,[2] they were examined by defense counsel independently and consequently provided two distinct statements. The police statement cannot match the level of detail and specificity contained in the Underwoods' verbatim statements, which were also under oath, and thus cannot be considered substantially equivalent. *See Bowling*, 2014 WL 1404572, at *6 (finding that a witness's two-line summary in an accident report was not substantially equivalent to a longer, more detailed statement given to the defendant's insurance carrier).

Galloway and Defendants raise further arguments addressing the witness statements' potential impeachment value. *See* Pl. Br. 6–7; Def. Br.7–9. Generally, in order to justify discovery of work product based on its impeachment value, a party "must present more than speculative or conclusory statements that the reports will contain invaluable impeachment material." *Duck v. Warren*, 160 F.R.D. 80, 83 (E.D. Va. 1995) (quoting *Suggs*, 152 F.R.D. at 507–08). However, as related above, contemporaneous witness statements have inherent significance because they record a witness's fresh recollections. This significance is fully distinct from any impeachment value they may also have and can independently warrant disclosure when the movant lacks their substantial equivalent. As I find that the Underwoods' statements are inherently valuable as contemporaneous recollections and Galloway does not have access to their

---

[2] The statement was given under the name of Robert Underwood, but signed by both Mr. and Mrs. Underwood. Def. Br. Ex. C. Though it is written from Mr. Underwood's perspective, a cursory glance at the writing and signatures strongly suggests that Mrs. Underwood actually wrote the statement.

7

substantial equivalent, he need not make any showing of the statements' impeachment value for his motion to succeed.

Furthermore, the potential evidentiary use of the statements militates for their disclosure. Defendants state that they had the Underwoods' statements transcribed and taken under oath so they could "rely on the documents if the Underwoods were not available to testify in this action." Def. Br. 1. Since then, the Underwoods have indicated that they will be available for deposition and trial. *Id.* Defendants have stated that they therefore do not "currently intend to rely on the sworn statements," but they have not completely disavowed future evidentiary use of the statements. Shifting litigation strategy does not control whether and when a party must disclose relevant, discoverable information.[3]

This discovery dispute does not present a situation where one party seeks to build his case on the back of his opponent's strategy, theories, and impressions. *Cf. Hickman v. Taylor*, 329 U.S. 495, 510 (1947). It involves equal access to important factual information. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* at 507. A lawsuit "is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided." *McDougall*, 468 F.2d at 473–74 (quoting *Tiedman v. Am. Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958)).

The Underwoods' sworn statements undeniably further the search for truth. Though the transcripts include defense counsel's questions, the majority of information within them comes from the verbatim statements of key third-party witnesses. Such statements are eminently factual and discoverable. *See Schipp v. General Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006); *cf. Dobbs*, 155 F.R.D. at 653 (compelling production of verbatim witness responses to an

---

[3] Naturally, any evidentiary use of work product waives the privilege. *United States v. Nobles*, 422 U.S. 225, 239–40 (1975).

attorney questionnaire). The factual nature of the Underwoods' statements and the lingering potential for their evidentiary use militate in favor of their disclosure. Finding otherwise would defy the principles of full and fair disclosure underlying the discovery process.

Defendants fear that requiring disclosure of the Underwoods' sworn statements subjects "every witness statement that [] counsel has obtained in this case[,]" including an attorney's "contemporaneous notes," to discovery. Def. Br. 9. These fears are unwarranted. I hold only that on these facts a party must provide in discovery a potential third-party witness's sworn statement upon a showing by the other party of substantial need and inability to obtain a substantial equivalent.

Despite my holding, I do not find Defendants' position in this matter unreasonable. They had sensible grounds to withhold the Underwoods' statements based on their lack of intention to use them, the availability of the Underwoods for deposition, and the existence of the contemporaneous police report. Though these grounds ultimately proved unfounded, I do not find that Defendants' position was unjustified.

## III. Conclusion

For the foregoing reasons, I find that Galloway's motion is well-founded. Therefore, I GRANT Galloway's Motion to Compel Production of Sworn Witness Statements, ECF No. 15, and ORDER Sunbelt to provide the Underwoods' statements within 10 days.

ENTER: January 14, 2015

Joel C. Hoppe
United States Magistrate Judge

9