IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JANE D. ROBERTS, Administrator of the<br>  Estate of Anthony Wade Galloway, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Civil Action No. 5:14-cv-00040 |
| v. | ) <br> ) | By: Elizabeth K. Dillon |
| SUNBELT RENTALS, INC., *et al.*, | ) <br> ) |     United States District Judge |
| Defendants. | ) <br> ) <br> ) | |

**MEMORANDUM OPINION**

In this personal injury case, plaintiff Jane Roberts and defendants Sunbelt Rentals, Inc.,

and David Church each move in limine to exclude certain testimony, evidence, and argument

from trial. Roberts also moves in limine for judicial notice of certain motor-vehicle statutes,

regulations, and manuals. The court has already ruled on some of the motions and now rules on

the rest.

## I.  BACKGROUND

On August 21, 2012, Galloway and Church were involved in a motor-vehicle accident on

a four-lane section of Route 11 northbound in Frederick County, Virginia. Galloway was driving

a moped, and Church was driving a rollback truck owned by his employer, Sunbelt. Moments

before the accident, Church turned right onto Route 11 from Pactiv Way. When Church made

the turn, Galloway was stopped at a red light on Route 11 where it intersects with Pactiv Way.

As Church proceeded on Route 11, Galloway ran the red light, crossed Pactiv Way, and came up

behind Church in the far-right lane of Route 11. Not seeing Galloway, Church then attempted a

right turn into a gas station. To make the turn, he first swung left into the two center lanes. He

then cut back across those lanes and entered the far-right lane. As he crossed the far-right lane, the passenger side of his truck collided with Church's moped. Church was seriously injured in the accident.

To recover for his injuries, Galloway brought this suit against Church and Sunbelt, alleging that Church was negligent in attempting to make a right turn into the gas station from the center lanes of Route 11 and that his negligence was the cause of the accident. In response, Church and Sunbelt assert that Galloway was negligent in running the red light at the Pactiv Way intersection and that his negligence caused or contributed to the accident. The case was originally set for trial beginning May 26, 2015. On May 2, however, Galloway unexpectedly died, and so the court continued the trial generally. Roughly two and a half months later, Roberts, the administrator of Galloway's estate, was substituted as plaintiff. The case is now set for trial starting May 16, 2016.

In preparation for trial, the parties have filed various motions in limine, asking the court to exclude certain testimony, evidence, and argument from trial. Roberts also wants the court to take judicial notice of particular motor-vehicle statutes, regulations, and manuals. The court held a hearing on the motions on September 30, 2015, and ruled on some of them from the bench. It will not revisit those rulings here. Rather, it will address only those motions that it took under advisement.

## II. ROBERTS'S MOTIONS

### A. Motion to Exclude Expert Paul Guthorn's Testimony

Roberts moves to exclude all or part of the testimony of Sunbelt and Church's expert Paul Guthorn on two grounds. First, she argues that all of Guthorn's testimony should be excluded because his report does not satisfy the requirements of Federal Rule of Civil Procedure

26(a).  (Pl.'s Mot. to Exclude Paul Guthorn 1–10, Dkt. No. 42.)  And second, in the alternative, she contends that part of his testimony should be excluded because it does not meet the demands of Federal Rule of Evidence 702.  (Pl.'s First Mot. in Limine 15–25, Dkt. No. 61.)

The court considers each ground in turn.

### 1.  *Sufficiency of Guthorn's Report Under Rule 26(a)*

Pursuant to Rule 26(a), a party must disclose the identity of any witnesses that it may use as an expert at trial.  Fed. R. Civ. P. 26(a)(2)(A).  "[I]f the witness is one retained or specifically employed to provide testimony in the case," then he must provide a signed, written report.  Fed. R. Civ. P. 26(a)(2)(B).  That report must contain:

> (i)  a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii)  the facts or data considered by the witness in forming them;

> (iii)  any exhibits that will be used to summarize or support them;

> (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v)  a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi)  a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

A party must disclose its experts and their reports "in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C).  If a party fails to make a timely and complete disclosure of an expert, then it may be subject to a range of sanctions.  Fed. R. Civ. P. 16(f), 37(c).  The available sanctions include the exclusion of the expert's testimony.  Fed. R. Civ. P. 37(b)(2)(A)(ii), 37(c)(1).

Here, Sunbelt and Church disclosed Guthorn and his report before the deadline set forth in the court's amended scheduling order (January 12, 2015). Nevertheless, Roberts contends that Guthorn's testimony should be excluded because his report does not meet the requirements of Rule 26(a). (Pl.'s Mot. to Exclude Paul Guthorn 10.)

Guthorn is an expert in accident reconstruction. In his 12-page report, he offers several opinions on the accident, including the speeds and positions of Church's and Galloway's vehicles. (Report of Paul Guthorn 11, Dkt. No. 42-1.) To prepare his report, Guthorn used PC-Crash, a computer simulation program. (*Id.* at 9.) He took data that he collected during his investigation of the accident (or data collected by other experts) and entered them into the program. (*Id.*) With those data, the program made various calculations and created a series of simulations of the accident. (*Id.*) The simulations feature different views of the accident, some of which purport to depict Church's and Galloway's respective fields of vision before the accident. (*Id.*)

Roberts contends that Guthorn's report is deficient because "it is devoid of data." (Pl.'s Mot. to Exclude Paul Guthorn 6.) In particular, she submits that Guthorn does not provide the data that he relied on to determine the vehicles' speeds and positions leading up to the accident. (*Id.*) Nor does he give the data that he entered into PC-Crash to create the simulations of the accident. (*Id.*) She also contends that he does not explain the calculations that PC-Crash made in creating those simulations. (*Id.*)

In response to Roberts's concerns about the sufficiency of Guthorn's report, Sunbelt and Church made several supplemental disclosures. At the September 30, 2015 hearing, however, Roberts argued that Sunbelt and Church had still not disclosed all of the data underlying Guthorn's opinions. Sunbelt and Church disagreed, but conceded that it had produced some data

from an electronic scanner in a proprietary format that Roberts may not have been able to access. The court thus directed the parties to confer and to advise it by letter as to whether Sunbelt and Church have in fact disclosed all of the data that Guthorn relied on in forming his opinions and whether Roberts is able to access those data.

The parties complied with the court's request, submitting a joint letter. In their part, Sunbelt and Church first make a confession: they have not actually provided the scan data and that they cannot provide those data in a format that Roberts can access without a proprietary program. But Sunbelt and Church contend that they have provided the only data that really matters—the location data. Location data, Sunbelt and Church explain, are the data of the positions of the vehicles in the simulations, which were provided to Roberts as GPS coordinates in intervals of 1/30th of a second. With those coordinates, Sunbelt and Church submit, Roberts's experts can compare Guthorn's positioning of the vehicles at any given time up to the accident with their own positioning.

In her part of the letter, Roberts renews her contention that Sunbelt and Church have still not provided all of the data that Guthorn used in reaching his opinions, in particular, the data that he entered into PC-Crash to create the simulations. Hence, she asks the court to exclude Guthorn's testimony in its entirety.

By their own admission, Sunbelt and Church failed to disclose all of the data underlying Guthorn's opinions in a timely manner. Since there was a scheduling order in place at the time of Sunbelt and Church's disclosure violation, the court will apply Rule 16(f) and its test to determine whether sanctions are appropriate.[1] *See Thompson v. United States*, No. 7:14-cv-00092, 2015 U.S. Dist. LEXIS 66433, at *9–10 (W.D. Va. May, 21, 2015) (explaining that Rule

---

[1] While the court chooses to apply Rule 16(f) here, it would nonetheless reach the same result if it were to apply Rule 37(c) instead, since the tests for the two rules are substantially the same. *Pac. AG Group v. H. Ghesquiere Farms, Inc.*, No. 5:05-cv-809, 2007 U.S. Dist. LEXIS 102328, at *8–9 (E.D.N.C. Jan. 19, 2007).

16(f), not Rule 37(c), applies "[w]hen a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan" (alteration in original) (quoting *Scott v. Holz-Her, U.S., Inc.*, No. 6:04-cv-00068, 2007 U.S. Dist. LEXIS 79552, at *3–4 (W.D. Va. Oct. 26, 2007))).

Under Rule 16(f), a district court has "wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedures." *World Wide Demil, LLC v. Nammo*, 51 F. App'x 403, 407 n.4 (4th Cir. 2002). Moreover, it enjoys broad discretion to decide whether an expert should be excluded for a disclosure violation. *See Campbell v. United States*, 470 F. App'x 153, 156 (4th Cir. 2012).

In determining whether to impose sanctions under Rule 16(f), a district court considers four factors: "(1) the reason for failing to name the witness [or failing to complete expert reports]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Scott*, 2007 U.S. Dist. LEXIS 79552, at *5 (alteration in original) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 736 (E.D.Va. 2001)).

Upon considering these factors, the court determines that exclusion of Guthorn is not warranted. To be sure, Sunbelt and Church's reasons for failing to timely disclose all of the data that Guthorn relied on in forming his opinions are weak. But Guthorn's testimony is pivotal to Sunbelt and Church's defense against Roberts's claim. The testimony supports Sunbelt and Church's version of events, including that Galloway's actions caused or contributed to the accident. The testimony also rebuts the testimony of Roberts's experts who offer a different version of events.

Moreover, allowing Guthorn to testify will result in little to no prejudice to Roberts, and that prejudice, if any, has been minimized by Sunbelt and Church's supplemental disclosures, which were made almost *a year* ago. This is not a case where a party has sprung a new opinion on another party only days before trial. Guthorn has not changed his opinions since he was disclosed. And though Roberts finds fault with his report, it is far from the sketchy or vague one- or two-page reports that other courts have thrown out under Rule 26(a). *See, e.g.*, *Campbell v. United States*, No. 3:10BCV363, 2011 U.S. Dist. LEXIS 12305, at *5–13 (E.D. Va. Feb. 8, 2011), *aff'd*, 470 F. App'x 153 (4th Cir. 2012) (excluding expert who provided a one-page report concluding without explanation that hospital officials deviated from the standard of care). On the contrary, Gurthorn's report runs 12 pages, and it contains much explanation of the data he gathered and the conclusions he reached based on those data. Indeed, it appears to be just as complete as some of the reports from Roberts's experts.

Moreover, while Sunbelt and Church cannot produce the scan data in a format that Roberts can access without a proprietary program, she fails to explain why that data is important when she has the location and other data. What matters, after all, is that she has sufficient data that she can rebut Guthorn's opinions. And it seems that the data that Sunbelt and Church have provided are enough for her to do just that, for two of her experts have taken those data and used them to produce a rebuttal report, challenging Guthorn's opinions. (Rebuttal Report of Scott Marsh and Matthew Moore 1–3, Dkt. No. 46-3.) Indeed, Roberts's experts have used Guthorn's data and simulations to compare their positioning of Church's and Galloway's vehicles with Guthorn's positioning. (Attachs. to Rebuttal Report of Scott Marsh and Matthew Moore 1–8, Dkt. No. 46-4.) Those same experts have also compared their estimation of the vehicles' speeds with Guthorn's. (Rebuttal Report of Scott Marsh and Matthew Moore 1–2.)

Accordingly, the court will allow Guthorn to testify at trial. But it will also permit Roberts to conduct voir dire on him as an additional remedy to any prejudice she may have suffered from Sunbelt and Church's disclosure violation.

### 2. Admissibility of Guthorn's Testimony Under Rule 702

Rule 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under this rule, a district court acts as gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588 (1993). "[T]he test of reliability is flexible," however, "and 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting *Kumho Tire Co.*, *Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999)). The test will thus vary depending on the type of expert testimony. *Id.* If the proffered testimony is scientific in nature, then the district court "must conduct 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Cooper v.*

*Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert*, 509 U.S. at 592–93). If, on the other hand, the proffered testimony is experiential in nature, then the district court must "require that [the] witness explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). The party proffering the expert testimony must establish its admissibility by a preponderance of proof. *Cooper*, 259 F.3d at 199.

Here, Roberts argues that Guthorn's simulations and several of his opinions do not meet the requirements of Rule 702 and should therefore be excluded. The court addresses first the simulations and then the opinions.

### a. Simulations

As noted earlier, Guthorn created various simulations of the accident using PC-Crash. Roberts contends that those simulations should be excluded because Sunbelt and Church have failed to provide the data that Guthorn entered into the program to create the simulations, and so it is impossible for her and her experts to test his methodology. (Pl.'s First Mot. in Limine 15–17.) Sunbelt and Church respond that the simulations are admissible demonstrative and substantive evidence because they have adequately disclosed the data that Guthorn relied on to make the simulations, and because those data are sufficient to support the simulations. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 11, Dkt. No. 69.)

The court believes that the simulations meet the requirements of Rule 702. As explained above, Sunbelt and Church have adequately disclosed the data that Guthorn relied on to create the simulations, and the court thinks that those data are sufficient to support them. Further, courts around the country have found that the use of PC-Crash to analyze an accident is a reliable

methodology, *see, e.g.*, *Moon v. United States*, No. 08 Civ. 1990, 2011 U.S. Dist. LEXIS 4765, at *16 (S.D.N.Y. Jan. 13, 2011) (collecting cases), and Roberts fails to convince this court otherwise here. The court will therefore allow the simulations, and Roberts will have a chance to challenge them at trial through "vigorous cross-examination" and "contrary evidence." *Daubert*, 509 U.S. at 596.

### b. Opinion 1

Guthorn's first opinion is that "Galloway and his moped collided with the right front of [Church's] truck." (Report of Paul Guthorn Report 11.) Roberts argues that this opinion should be excluded because the jury is capable of viewing the demonstrative evidence and determining for itself what occurred in the accident. (Pl.'s First Mot. in Limine 17.) Sunbelt and Church counter that the opinion is admissible to rebut one of Roberts's experts who opines that Church's truck collided with Galloway's moped, not the other way around. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 12.)

The court agrees with Sunbelt and Church. Roberts has designated an expert who says that Church's truck hit Galloway's moped. (Report of Scott Turner 24, Dkt. No. 59-2.) So Sunbelt and Church may rebut that expert through Guthorn whose opinion on the matter appears to be based on many of the same materials that Roberts's expert used to arrive at his contrary opinion. (*Compare* Report of Paul Guthorn 1, *with* Report of Scott Turner 1, 4.) The court will thus allow Guthorn's opinion 1.

### c. Opinion 2

Guthorn's second opinion is that at the time of the accident, "Galloway was travelling at approximately 28 mph and the truck was travelling at approximately 13 mph." (Report of Paul Guthorn Report 11.) Roberts contends that this opinion should be excluded for two reasons.

First, as two of her experts explain, it is difficult to obtain an accurate speed in terms of miles per hour over a short period; thus, it is better to provide a range of speeds, as opposed to a specific speed. (Pl.'s First Mot. in Limine 18.) And second, the speeds of the moped and truck at the time of the accident are irrelevant to the issues of either Church's negligence or Galloway's, since the parties agree that the applicable speed limit was 35 mph. (*Id.*)

In response, Sunbelt and Church argue that opinion 2 is admissible because it is based on a reliable methodology (distance travelled divided by time), and because it is supported by sufficient data (a security video of the accident and a survey of the place of the accident). (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 12; Defs.' Mem. in Opp'n to Pl.'s Mot. to Exclude Paul Guthorn 4, Dkt. No. 46.) They further contend that the opinion is relevant because it contradicts Galloway's testimony that he was going only 18–20 mph at the time of the accident and that his moped tops out at just 25–27 mph, and because it corroborates the testimony of Robert and Kristin Underwood who say that Galloway appeared to be trying to pass Church's truck when the accident happened. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 13.)

The court agrees with Sunbelt and Church. It seems that Guthorn used the same methodology and data to reach his opinion on the speeds of the vehicles as were used by Roberts's experts to form their opinion on the matter. (*Compare* Report of Paul Guthorn 8–10, *with* Rebuttal Report of Scott March and Matthew Moore 1–3.) That her experts disagree with Guthorn does not make his opinion inadmissible. Moreover, Guthorn's opinion is clearly relevant to the issues at hand. Even if Galloway was not speeding at the time of the accident, the fact that he was accelerating immediately beforehand lends support to Sunbelt and Church's claim that he was trying to pass Church's truck. Accordingly, the court will allow Guthorn's opinion 2.

#### d. Opinions 5 and 6

Guthorn's fifth opinion is that if Galloway had stopped at the Pactiv Way intersection for a full minute, as opposed to just 37 seconds, then Church would have completed his turn into the gas station and the accident would not have occurred. (Report of Paul Guthorn Report 11.) And Guthorn's sixth opinion is that the accident also would not have occurred if Galloway had waited until the light had turned green. (*Id.*)

Roberts submits that these opinions are inadmissible because Guthorn provides no factual support for them in his report. (Pl.'s First Mot. in Limine 19–20.) She also maintains that to the extent the opinions are based on the security video of the accident or the simulations, the jury is capable of viewing those materials and reaching its own conclusion as to what would have happened if Galloway had waited at the light longer than he did. (*Id.* at 19.) Lastly, she contends that Guthorn is not an expert on driving commercial motor vehicles, and so he lacks the requisite knowledge to form an opinion on how long it would have taken Church to complete the turn into the gas station. (*Id.* at 20.)

In response, Sunbelt and Church first argue that Guthorn's opinions 5 and 6 are admissible because they are "proper expert testimony." (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 13.) According to Sunbelt and Church, the "opinions are not the province of the jury, as the locations of the Truck throughout each moment requires expert testimony." (*Id.*) Sunbelt and Church further submit that the opinions are admissible because they are sufficiently supported: "Guthorn's animations include[] a demonstration of the facts and data underlying [the] opinion[s]." (*Id.* at 13–14.)

The court agrees with Sunbelt and Church. In his report, Guthorn states that "[b]ased on the amount of time shown in the video," [he] estimates that it would have taken Church another

11 or 12 seconds, for a total time of approximately 22 to 23 seconds[] to reach the service station

pump island." (Report of Paul Guthorn Report 10.) Guthorn also states that he was able to

calculate the speed of Church's truck at the time of the accident from the video. (*Id.* at 1, 10.)

The court believes that those data, combined with the data from the place of the accident, are

sufficient to support Guthorn's opinions as to what would have happened had Galloway waited

at the light longer and the corresponding simulations. The court further thinks that the opinions

will help the jury determine what role, if any, Galloway's running of the red light played in the

accident. It will thus allow Guthorn's opinions 5 and 6.

### e. Opinion 10

Guthorn's tenth opinion is that "Galloway's speed was far greater than the speed value he

provided in his disposition testimony." (Report of Paul Guthorn 11.) Roberts contends that

Guthorn should be prohibited from offering this opinion because it was formed without the use

of expertise. (Pl.'s First Mot. in Limine 18.) Further, she submits, the opinion "provides no

assistance to the trier of fact" and "invades the exclusive purview of the jury by commenting on

the credibility of a witness." (*Id.*)

Sunbelt and Church counter that Guthorn's opinion 10 is admissible because Guthorn is

simply "analyzing the physical evidence available, comparing it to [Galloway's] version of

events, and opinion on whether [Galloway's] account is consistent with the physical evidence."

(Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 14.)

The court agrees with Roberts. Expert testimony is not needed for the jury to determine

that Guthorn's estimation of Galloway's speed at the time of the accident is "far greater" than the

estimation that Galloway himself gave at his deposition. The jury is capable of hearing both

estimations and determining for itself which estimation is greater. It is also capable of making

its own determinations on the credibility of Guthorn and Galloway. The court will thus exclude Guthorn's opinion 10.

### f. Opinions 12, 13, and 14

Guthorn's twelfth and fourteenth opinions state that if Galloway "lost sight" of Church's truck before the accident, it was not because the truck was out of his available field of vision; the truck would have been visible to him the entire time. (Report of Paul Guthorn 12.) And Guthorn's thirteenth opinion states that "once he elected to run the red light, Galloway and his . . . moped would have only been visible to Church in Church's right side mirror for about four seconds when Galloway was approximately 80 to 110 feet back of the truck mirror and possibly for . . . approximately 2 seconds before the collision." (*Id.*)

Roberts argues that these opinions are inadmissible because Guthorn fails to provide the parameters he used for his purported fields of vision or indentify the facts he relied on in establishing them in his simulations. (Pl.'s First Mot. in Limine 23–24.) In fact, she notes, he fails to even identify what a field of vision is within the context of the opinions. (*Id.* at 23.) She further submits that it is "entirely unapparent what information . . . Guthorn relied on to reach" his conclusion that Galloway would have been visible in Church's right side mirror for a few seconds, where another one of Sunbelt and Church's experts opines that "Galloway would *not* have been visible in . . . Church's mirrors, and where there exists no information about the location in which . . . Church's mirrors were positioned during his turn." (Pl.'s Reply Mem. in Supp. of First Motion in Limine 12–13, Dkt. No. 79.)

Sunbelt and Church submit that Guthorn's opinions 12, 13, and 14 are sufficiently supported and thus admissible. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 14.) They contend that in arguing to the contrary, Roberts ignores the evidence in the record. (*Id.* at 14–

15.)  For instance, they point out, one of Roberts's experts provided illustrations showing what a commercial driver can and cannot see through his side mirrors while driving.  (*Id.* at 15.) Moreover, Sunbelt and Church continue, Galloway testified at his deposition about the parameters of his field of vision at the time of the accident.  (*Id.*)  Based on these facts and data, Sunbelt and Church maintain, Guthorn was able to form his opinions on what Church and Galloway were each able see before the accident and to create the simulations showing their respective fields of vision.  (*Id.*)

The court agrees with Sunbelt and Church.  The facts and data contained in the record are sufficient to support Guthorn's opinions.  Indeed, as Sunbelt and Church note, one of Roberts's experts uses those facts and data to reach his own opinions as to what Church could and could not see through his right-side mirror before the accident.  That Guthorn and Roberts's expert reach different opinions does not make one expert's opinions admissible and the other's not.  The same goes for the fact that another one of Sunbelt and Church's experts disagrees with Guthorn. Roberts will have a chance to raise these differences of opinion at trial through cross-examination and contrary evidence; it will then be up to the jury to sort out which opinions are credible.  Accordingly, the court will allow Guthorn's opinions 12, 13, and 14.

\* \* \*

The court will deny Roberts's motion to exclude Guthorn's testimony based on the sufficiency of his report under Rule 26(a), and will grant in part and deny in part her motion to exclude him based on the admissibility of his opinions under Rule 702.

## B.  Motion to Exclude Expert Jeff Clark's Testimony

Roberts also moves to exclude all or part of the testimony of Sunbelt and Church's expert Jeff Clark.  Clark is an expert on driving commercial motor vehicles.  In his 10-page report, he

offers various opinions on the propriety of Church's and Galloway's actions. (Report of Jeff Clark 3–10, Dkt. No. 61-2.) Among other things, he opines that Church exercised reasonable care in making the right turn into the gas station, but that Galloway did not in running the red light. (*Id.* at 5–8.) In reaching his opinions, Clark visited the place of the accident on December 29, 2014. (*Id.* at 2.) During that visit, he drove Church's truck, making the same right turn into the gas station that Church was making at the time of the accident. (*Id.*) Church rode along with Clark in the truck during the test.

### 1. *Reliability of Clark's Testimony*

Roberts first attacks Clark's testimony on reliability grounds. (Pl.'s First Mot. in Limine 5–11.) She argues that it should be excluded in its entirety under Rule 702 as the product of an unreliable methodology. (*Id.*) She maintains that in testing Church's right turn into the gas station, Clark failed to establish the necessary parameters, "such as where [Church's] mirrors were located, what gears [Church] used, and what position [Church's] seat was in." (*Id.* at 7.) In addition, she submits, Clark was unable to determine from the security video which lane Church was in when he made the right turn. (*Id.*)

Roberts further argues that Clark's testimony is unreliable because he failed to accurately account for certain facts in forming them. (*Id.* at 8.) For instance, she notes, Clark misunderstood Church's use of his mirrors before the accident. (*Id.*) In his report, Clark opines that Church properly checked his mirrors while "performing his right turn." (*Id.*) At his deposition, however, Clark testified that Church really checked his mirrors "before starting to turn." (*Id.*)

Roberts also contends that Clark's testimony is unreliable because it is contradicted by the testimony of one of Sunbelt and Church's other experts—Guthorn. (*Id.* at 10–11.) For

example, she points out that while Clark opines that Church's mirrors were positioned so that Galloway would not have been visible, Guthorn's simulations show that Galloway would have been visible for several seconds. (*Id.*)

Lastly, Roberts argues that Clark's testimony is unreliable because he ignored contrary facts. (*Id.* at 8.) In reaching his opinions, Clark relies on Church's statement that Church used his turn signal when making the right turn into the gas station. (*Id.*) But, Roberts submits, three other witnesses did not see a turn signal, and no turn signal can be identified from the security video. (*Id.* at 9.) Nevertheless, Roberts contends, Clark provides no justification for rejecting these contrary facts. (*Id.*)

In response, Sunbelt and Church assert that Clark's testimony is reliable. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 5–7.) They first point out that Clark has extensive experience in the commercial driving field. (*Id.* at 5.) Indeed, he has trained commercial drivers on how to make turns similar to the one that Church was making at the time of the accident. (*Id.*) Sunbelt and Church also maintain that Clark's testimony is based on sufficient facts and data, including the security video, witness depositions, discovery documents, an inspection of the place of the accident, and a test in Church's truck. (*Id.* at 5–6.)

As for Roberts's criticism of Clark's methodology, Sunbelt and Church contend that they go to the weight of Clark's testimony, not its admissibility. (*Id.* at 6.) In fact, they submit that Roberts's experts used a similar methodology in reaching their opinions. (*Id.* 6–7.) Sunbelt and Church further argue that all of the points Roberts "raises are with Clark's conclusions, not the methodology he used," which is not a proper basis for a challenge under Rule 702. (*Id.* at 7.)

The court agrees with Sunbelt and Church. There can be no doubt that Clark is qualified to testify about the propriety of Church's actions. And while Roberts raises some legitimate

criticisms about the validity of Clark's testimony, such as whether he gave proper consideration to all relevant facts, those criticisms go to the weight, not admissibility, of the testimony. She will have a chance to challenge the testimony at trial through cross-examination and contrary evidence from her experts, and then it will be for the jury to decide what, if any, weight to give the testimony. Accordingly, the court will not exclude Clark's testimony on reliability grounds under Rule 702.

### 2. *Relevancy of Clark's Testimony*

Roberts also attacks several of Clark's opinions on relevancy grounds. (Pl.'s First Mot. in Limine 11–14.) The court first takes up the overarching opinion that she objects to and then addresses the specific opinions she challenges.

#### a. **Opinion on Church's Reliance on Red Light**

In concluding that Church's actions were proper, Clark opines that it was appropriate for Church to rely on the red light behind him in making the right turn into the gas station. (Report of Jeff Clark 5–6, 10.) Roberts argues that this opinion is inadmissible because it will not assist the jury. (Pl.'s First Mot. in Limine 11.) According to Roberts, "[w]hether or not it was reasonable for [Church] to rely on the red light to control traffic is a matter within the common knowledge of the jury, and [thus] Clark's purported expertise will not assist the trier of fact on this issue." (*Id.* at 12.)

Sunbelt and Church counter that Clark's opinion on Church's reliance on the red light "is relevant to whether a commercial motor vehicle operator could rely on the red light to provide clearance to make his turn." (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 8.) "This issue, they continue, "requires special knowledge and training as to the standard of care for CDL drivers, making Clark's testimony proper and admissible." (*Id.* at 8.)

The court agrees with Sunbelt and Church. While Clark noted at this deposition that commercial and noncommercial drivers alike must take into consideration their surroundings, including the status of traffic lights, while driving, that does not make his opinion on Church's reliance on the red light here a matter of common knowledge. The court does not believe that the average person knows whether or under what circumstances it is appropriate for a driver of a commercial vehicle to use a red light in the manner that Church did in this case. That issue, then, is the proper subject of expert testimony. Accordingly, the court will allow Clark's opinion on Church's reliance on the red light.

### b. Opinion 1

Clark's first opinion states, in relevant part, that "Church had an excellent work history with Sunbelt. (Report of Jeff Clark 3.) Roberts contends that this opinion is inadmissible character evidence. (Pl.'s First Mot. in Limine 12–13.) Sunbelt and Church respond that the opinion is relevant and admissible to explain why Clark believes that Church's actions were proper. (Defs.' Mem. in Opp'n to Pl.'s First Mot. in Limine 8.)

The court agrees with Roberts. Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to show that on a particular occasion the person acted in accordance with the character." Here, it is clear that Clark's opinion about Church's "excellent work history" is being offered to suggest that Church was acting in accordance with that character at the time of the accident. The court will thus exclude Clark's opinion 1.

### c. Opinion 2

Clark's second opinion states that "Church made the safest possible choice when determining which entrance to use to the [gas] station." (Report of Jeff Clark 3.) Consistent with its prior ruling, the court will not allow this or any other opinion on whether Church chose

the safest entrance into the gas station because under Virginia law, a driver's choice of route is irrelevant: it is "only an antecedent circumstance—at most an independent remote cause of the mishap that measures up to nothing more than a mere 'but for cause' of the collision." *Long's Baggage Transfer Co. v. Moore*, 95 S.E.2d 221, 223 (Va. 1956.)  The court will thus exclude Clark's opinion 2.

### d.  Opinion 6

Clark's sixth opinion states that "[t]he accident was caused by Galloway's own negligence and failure to comply with Virginia [Code §] 46.2-333," which allows a driver of a moped to go through a red light only under limited conditions.  (Report of Jeff Clark 6.)  Roberts contends that this opinion is inadmissible because Clark lacks the requisite qualifications to opine on the propriety of Galloway's actions and what effect, if any, they had on the accident. (Pl.'s First Mot. to Dismiss 13.)  In particular, she notes, Clark is not an expert on mopeds or an expert on accident reconstruction.  (*Id.*)  Nor, she continues, is he qualified to testify as to what constitutes a violation of Virginia law.  (*Id.*)

In response, Sunbelt and Church contend that Clark's opinion 6 is admissible.  (Defs.' Mem. in Opp'n to Pl.'s First Mot in Limine 8.)  While they agree that Clark cannot testify that Galloway was contributorily negligence, they submit that Clark can testify about the effect that Galloway's red light had on Church's decision to make the right turn as he did.  (*Id.*)  According to Sunbelt and Church, Clark's opinion simply explains "why, in the context of the turn that Church was making and how a prudent commercial motor vehicle operator might approach the turn into the parking lot, including relying on the red light to control traffic behind him and ensure that he has sufficient space to complete the turn."  (*Id.*)

The court agrees with Roberts. Clark is not qualified to testify about the propriety of Galloway's actions or about the effect, if any, those actions had on the accident. Further, he is not qualified to testify about the law that is applicable to drivers of mopeds or about Galloway's compliance or noncompliance with that law. Nor would it be proper for him to do so even if he had the necessary qualifications.

As explained above, however, the court agrees with Sunbelt and Roberts that Clark can testify about what role, if any, a red light plays in a commercial driver's decision to make a right turn in the manner that Church did here. That opinion is set forth elsewhere in Clark's report.

The court will therefore exclude Clark's opinion 6.

### e. Opinion 9

Clark's ninth opinion states that "Church's answer in his deposition that he does not 'remember no specific 20 points of knowledge' listed in the Federal Motor Carrier Safety Regulations is not at all probative or indicative of his knowledge as a CDL driver." (Report of Jeff Clark 8.) Consistent with its earlier ruling, the court will not allow this or any other opinion on the 20 points of knowledge because they do not provide the applicable standard of care here and are thus irrelevant. Accordingly, the court will exclude Clark's opinion 9.

### f. Opinions 11 and 13

Clark's eleventh opinion states that "Church was not required to submit to a post-accident drug or alcohol test under the applicable federal regulations." (Report of Jeff Clark 9.) And Clark's thirteenth opinion states that "[t]here is no evidence that Church was fatigued at the time of the accident or that fatigue played any role in the accident. The presence of caffeine packets is not evidence of fatigue." (*Id.*)

Roberts contends that these opinions are inadmissible because they involve matters of common knowledge. (Pl.'s First Mot. in Limine 14.) Further, she submits that Clark lacks the necessary qualifications to opine on what evidence is relevant to show a commercial driver's fatigue. (*Id.* at 15.)

Sunbelt and Church respond that Clark's opinions 11 and 13 are conditionally relevant. (Defs.' Mem. in Opp'n to Pl.'s First Mot in Limine 9.) Though Roberts has withdrawn her experts' opinions on drug testing and hours of service, she has not confirmed that she will not offer evidence or argument on those matters at trial. So Sunbelt and Church maintain that they may need Clark's opinions in rebuttal. (*Id.*)

Because Clark's opinions 11 and 13 appear to be no longer relevant to any issue in the case, the court will exclude them. Of course, should Roberts present evidence on drug testing or hours of service at trial, then the court will revisit the admissibility of Clark's opinions on those matters.

\* \* \*

The court will grant Roberts's motion to exclude Clark's testimony in part and deny it in part.

## C. Motion to Exclude Certain Testimony from the Underwoods

Roberts next moves to exclude any testimony from the Underwoods about what they saw Galloway do before he reached the intersection of Route 11 and Pactiv Way on the day of the accident. (Pl.'s Third Mot. in Limine 12, Dkt. No 63.) The Underwoods first saw Galloway that day at the preceding intersection. At that time, they claim that he cut them off, blew his horn, and gave them the finger. Roberts contends that this testimony "should be prohibited as

impermissible character evidence" (*id.*) or as "highly prejudicial" (Pl.'s Reply Mem. in Supp. of Third Mot. in Limine 11, Dkt. No. 81).

Sunbelt and Church respond that the Underwoods' testimony is admissible substitutive and impeachment evidence. (Defs.' Mem. in Opp'n to Pl.'s Third Mot. in Limine 18, Dkt. No. 71.) They argue that the testimony shows that Galloway was driving dangerously on the day of the accident and rebuts his claim that he was not. (*Id.*) They also submit that the testimony may be needed to rehabilitate the Underwoods if Roberts tries to impeach them by showing that they were not paying close enough attention to their surroundings before the accident. According to Sunbelt and Church, the testimony explains why the Underwoods were focused on Galloway before the accident. (*Id.*)

As noted above, Rule 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to show that on a particular occasion the person acted in accordance with the character." But such evidence is not *per se* inadmissible. It may be used for other "purpose[s], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "Rule 404(b) is an inclusionary rule, allowing evidence of other crimes or acts to be admitted, except that which tends to prove only criminal disposition." *United States v. Penniegraft*, 641 F.3d 566, 574 (4th Cir. 2011).

For evidence of a crime, wrong, or other act to be admissible, it must be relevant to an issue other than the person's character, necessary, and reliable. *Id.* And "the probative value of the evidence must not be substantially outweighed by its prejudicial effect." *Id.*; *see also* Fed. R. Evid. R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

The Underwoods' testimony is relevant to Sunbelt and Church's contributory-negligence defense: it tends to make the fact that Galloway was driving dangerously at the time of the accident more probable than not. Sunbelt and Church submit that Galloway saw Church's truck as it was turning, but nevertheless tried to pass it. That Galloway was driving aggressively immediately before the accident by cutting the Underwoods off lends support to Sunbelt and Church's claim. It would be a different case if the Underwoods had seen Galloway drive dangerously weeks, days, or even hours before the time of the accident. *See Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52–53 (4th Cir. 1993) (holding that evidence of the plaintiff's prior convictions for speeding was inadmissible under Rule 404(b) because it did not tend to prove that the plaintiff was speeding at the time of the accident at issue). Or if they had seen him driving dangerously miles before the place of the accident. The proximity in time and place makes all the difference here.

Even so, the probative value of the Underwoods' testimony may be outweighed by its prejudicial effect on Roberts. The court, however, is unable to make that determination now based on the parties' submissions. It needs more context. It will thus deny Roberts's motion to exclude the Underwoods' testimony without prejudice. She may renew the motion at the appropriate time during trial.

**D. Motion for Judicial Notice of Motor-Vehicle Statutes, Regulations, and Manuals**

Finally, Roberts moves for judicial notice of all or part of the following motor-vehicle statutes, regulations, and manuals: Virginia Code §§ 46.2-100, -804, -841, -846, -848; the Federal Motor Carrier Safety Regulations (FMCSR), 49 C.F.R. §§ 383.91, 383.111, 383.113, 392.2; and the Virginia and West Virginia commercial driver's manuals. (Pl.'s Second Mot. in Limine 2–9, Dkt. No. 62.) She argues that these materials are relevant to the applicable standard

of care and that they are generally known and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  (*Id.* at 4, 8–9.)  Accordingly, she maintains, the court must take judicial notice of the materials under 44 U.S.C. § 1507 or Federal Rule of Evidence 201.  (*Id.* at 2, 4, 8–9.)

In response, Sunbelt and Church contend that the court should not take judicial notice of the statutes or manuals as presented because they are incomplete and because they "'remain subject to reasonable dispute' to the extent [Roberts] proffers [them] as evidence of the standard of care or Church's violation thereof."  (Defs.' Mem. in Opp'n to Pl.'s Second Mot. in Limine 3, Dkt. No. 70.)  Judicial notice of the statutes and manuals would also be improper, Sunbelt and Church continue, because it is for the court, and not the parties, to instruct the jury on the applicable law.  (*Id.* at 4–5.)  Lastly, Sunbelt and Church submit that the regulations are not relevant.  (*Id.* at 8–10.)

Pursuant to § 1507, a trial "court may take judicial notice of provisions of the Code of Federal Regulations."  *Crimm v. Mo. Pac. R. Co.*, 750 F.2d 703, 710 (8th Cir. 1984).  And under Rule 201, a trial court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a)–(b).  The trial court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

As an initial matter, the court does not think that Rule 201 applies to Roberts's motion. She seeks judicial notice of statutes and regulations or summaries of statutes and regulations (the manuals).  Such materials are not adjudicative facts—facts of the particular case.  Fed. R. Evid.

201(a) advisory committee's note to 1972 proposed rules. Rather, they are legislative facts—facts that do not change from case to case, but instead apply to all cases. *Id.*; *see also United States v. Williams*, 442 F.3d 1259, 1261 (10th Cir. 2006) ("Statutes are considered legislative facts—established truths, facts or pronouncements that do not change from case to case but apply universally." (internal quotation marks and citation omitted)), *cited with approval in United States v. Gavegnano*, 305 F. App'x 954, 956 (4th Cir. 2009). Hence, Roberts's motion falls outside the scope of Rule 201.

Nevertheless, a trial court has the authority to take judicial notice of legislative facts. *Williams*, 442 F.3d at 1261; *Crimm*, 750 F.2d at 710. But those facts must still be relevant to the case at hand. *Ebersole v. Kline-Perry*, No. 1:12-cv-26, 2012 U.S. Dist. LEXIS 93193, at *16 (E.D. Va. July 5, 2012); *see also United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998) ("We cannot imagine that, in enacting § 1507, Congress intended to override [Federal Rule of Evidence 402], and make judicial notice mandatory, when a matter that appeared in the Federal Register is irrelevant to the proceeding at hand.").

Here, it is clear that one of the regulations that Roberts wants judicially noticed—§ 383.111 of the FMCSR—is irrelevant. That section addresses 20 points of knowledge on which state agencies must train and test operators of commercial motor vehicles. It does not provide the applicable standard of care here. The court will therefore deny Roberts's motion as to § 383.111.

As for the other materials that Roberts wants judicially noticed, the court lacks sufficient context to determine their relevancy. With respect to those materials, then, the court will deny Roberts's motion without prejudice. She may renew the motion at the appropriate time during trial.

### III. SUNBELT AND CHURCH'S MOTION

Sunbelt and Church move to exclude the testimony of Roberts's expert Scott Turner. (Defs.' Mem. in Supp. of Mot. in Limine 7, Dkt. No. 59.)  Turner is an expert in commercial motor-vehicle accidents.  In this case, he opines that Church acted recklessly when he swung left in making the right turn into the gas station.  (Report of Scott Turner 24–25.)  During his deposition, though, Turner conceded that making such a maneuver is not always improper:

> Q       Is there ever an instance when . . . it's acceptable for a truck driver to [swing left] in making a right turn?
>
> A       If he has a spotter behind him—if he is running a heavy load and he has got a spotter behind him that's able to hold off—it's a long heavy load, all right, long combination vehicle or something to that effect and you have some type of spotter behind you, if your hauling a crane, if you're hauling a large track how, and you need to obviously swing wide in order to . . . make that turn, then of course.  If you have a spotter vehicle behind you, then it would be acceptable, if that spotter vehicle was capable of holding up traffic or a state trooper or local PD, et cetera.
>
> Q       So just so I understand you, as long as circumstances are such that traffic is restricted from entering your area and you can . . . safely make that maneuver.  Is that what you're saying?
>
> A       Yes, sir.

(Scott Turner Dep. 82–83, Dkt. No. 59-5.)

In reaching his opinions on the propriety of Church's actions, Tuner did not consider the effect that Galloway's running of the red light may have had on the accident because, as he explained at his deposition, he thought that it went beyond the parameters of his assignment as an expert:

> Q       Isn't it true that Mr. Galloway violated the traffic safety laws that governed how he was to proceed at [the intersection of Route 11 and Pactiv Way]?
>
> A       I would believe so.

. . . .

Q      You would agree that had Mr. Galloway waited 10 to 15 seconds longer before entering the intersection this accident wouldn't have happened?

A      Well, I look at these two issues of what occurred and the violation of the traffic light as being mutually exclusive. . . . [M]y assignment is to examine the commercial motor vehicle operator, what he did right, what he did wrong.  All right?

These two issues here as far as I am concerned from my opinion's standpoint is they are mutually exclusive of each other.  So what [Galloway]  did at that point in time at the traffic light, sure, it's a violation.  It is a totally separate issue. . . . [A]t the time of the crash, he had every right to be where he was.

(*Id.* at 67–68.)

Sunbelt and Church argue that Turner's failure to consider the effect of Galloway's actions before the accident makes his testimony on the propriety of Church's actions unreliable and thus inadmissible under Rule 702.  (Defs.' Reply Mem. in Supp. of Mot in Limine 5–7, Dkt. No. 86)  In Sunbelt and Church's view, Galloway's running of the red light is a "crucial variable" in determining whether Church exercised reasonable care under the circumstances because, as Turner acknowledged, a commercial driver may swing left in making a right turn if traffic is restricted behind him.  (*Id.* at 5–6.)  Accordingly, Sunbelt and Church contend, Tuner should have considered Galloway's running of the red light in reaching his opinion on the propriety of Church's swinging left in making the right turn into the gas station, and that his failure to do so renders his testimony unreliable.  (*Id.* at 6–7.)

Roberts counters that Turner's testimony is reliable.  (Pl.'s Mem. in Opp'n to Defs.' Mot. in Limine 11, Dkt. No. 68.)  She first clarifies that he was not retained to opine on the cause of the accident; he was retained to opine on the propriety of Church's actions.  (*Id.* at 12.)  Thus, she submits, Turner was not required to consider and rule out all alternative causes of the

28

accident, such as Galloway's running of the red light, as were the experts in the cases that Sunbelt and Church rely on in support of their motion.  (*Id.* at 12–14.)

Next, Roberts contends that Turner did consider all relevant variables in arriving at his opinion.  (*Id.* at 12.)  His report, she notes, "includes evidence of [Galloway's] activities at the stop light, his movement through the intersection, and his path toward the collision with [Church's] truck."  (*Id.*)  Hence, she continues, this is not a case "where an expert deliberately ignored evidence in favor of other evidence that is more advantageous to his position."  (*Id.* at 13.)

Finally, Roberts argues that, contrary to Sunbelt and Church's insinuation, Turner did not suggest at his deposition that a red light may be enough of a restriction on traffic for a commercial driver to swing left in making a right turn.  (*Id.* at 14.)  Rather, he made clear that "only the presence of a spotter or law enforcement could provide" a sufficient control on traffic to make such a maneuver proper.  (*Id.* 15.)

The court believes that Turner's testimony is admissible under Rule 702.  There is no question that he is qualified to testify on the propriety of Church's actions or that his testimony is relevant.  The only question is whether his testimony is reliable.  Though Sunbelt and Church raise a legitimate question about the validity of Turner's testimony—in particular, whether he gave proper consideration to Galloway's running of the red light—that question goes to the weight, not the admissibility, of the testimony.  Sunbelt and Church will have an opportunity to challenge Turner's testimony at trial not only through cross-examination, but also through the testimony of their own experts, Guthorn and Clark; it will then be up to the jury to decide what, if any, weight to give Turner's testimony.  The court is confident that the jury will be able to see

whatever shortcomings may exist in Turner's testimony, or, for that matter, in the testimony of any other expert.

The court will therefore deny Sunbelt and Church's motion to exclude Turner's testimony.

## IV. CONCLUSION

For the foregoing reasons, the court will grant Roberts's motion to exclude Guthorn's testimony in part and deny it in part, grant her motion to exclude Clark's testimony in part and deny it in part, deny her motion to exclude the Underwoods' testimony, and deny her motion for judicial notice. The court will also deny Sunbelt and Church's motion to exclude Turner's testimony.

These and the court's prior rulings on the parties' motions will be memorialized in an appropriate order to follow.

Entered: March 30, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge